# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

TOWAUN COLEMAN,

                               Plaintiff,

                                              9:15-CV-40

        v.                                     (TJM/ATB)

STEVEN RACETTE, et al.,

                               Defendants.

---

TOWAUN COLEMAN, Plaintiff, pro se
NICOLE E. HAIMSON, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge. Presently before the court is the defendants' motion to dismiss plaintiff's amended complaint[1] for failure to state a claim,[2] in its entirety as against defendant Racette, and as to the retaliation claims as against defendant Nolan.[3] (Dkt. No. 28). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 32, 33). For the following reasons, this court agrees with defendants and will recommend dismissing all claims as against defendant Racette and all claims except the excessive force claim as against defendant Nolan.

---

[1] ("AC") (Dkt. No. 19).

[2] Fed. R. Civ. P. 12(b)(6).

[3] Defendant Nolan does not move to dismiss the excessive force claim against him.

I.  **Facts**

In his June 24, 2015 Order, Senior Judge McAvoy summarized the facts as stated in plaintiff's amended complaint.[4] (Dkt. No. 21 at 2-5). This court will briefly review these facts and discuss any additional facts as necessary to my recommendation.

On March 24, 2014, plaintiff wrote a letter to defendant Racette, asking for permission to possess "materials pertaining to: 1.) Ecclesiastical Cannon Law; 2.) Uniform Commercial Code ("UCC"); 3.) The Law of Trusts and Bonds; 4.) The United States Codes [sic]; 5.) The Law on Corporate Law; and 6.) UCC Forms."[5] (AC at 4). Plaintiff claimed that he needed this information to litigate "court mater regarding plaintiff's conviction." (*Id.*) On April 2, 2014, plaintiff forwarded the letter to Deputy Superintendent for Programs ("DSP") Proulx. (AC at 4; Dkt. No. 19-2 at 2-3).[6] On April 15, 2014, plaintiff received a response from defendant Racette, indicating that plaintiff's "communication" which was "received" on April 14, 2014, had been referred to DSP Proulx for review and appropriate action. (AC at 4; Dkt. No. 19 at 4). Not having received a definitive response to his requests, on April 30, 2014, plaintiff filed a

---

[4] Plaintiff attached an additional 62 pages of exhibits to his original complaint. Although he neglected to attach the exhibits to his amended complaint, he referred to them in the amended pleading. Thus, Judge McAvoy found that plaintiff intended to include the exhibits with his amended complaint. He directed the Clerk to file the exhibits along with the amended complaint. (Dkt. No. 21 at 2 n.1).

[5] Plaintiff has attached a copy of his March 24, 2014 letter. (Dkt. No. 19-2 at 1). However, the documents requested in the letter do not exactly match the documents that plaintiff states in his amended complaint that he requested. The court notes that in his actual letter, plaintiff did not request UCC forms, "The Law on Corporate Law," or the United States Code. (*Compare* AC at 4 with Dkt. No. 19-2 at 1). This discrepancy does not affect this court's decision.

[6] Plaintiff's exhibits will be cited with the Docket Number and the pages as assigned by the court's electronic filing system (CM/ECF).

grievance regarding the "silent" denial of the requested materials and asking that a formal denial be "in writing." (AC at 4-5; Dkt. No. 19 at 5-6). Plaintiff claimed that "immediately" upon filing this grievance, plaintiff returned from work to find his cell in disarray.[7] (AC at 5).

Plaintiff filed a grievance complaining about the search of his cell. (AC at 5; Dkt. No. 19-2 at 7-8). On May 29, 2014, defendant Racette denied the search-related grievance, stating that the search was due to "safety and security concerns," and that eighteen pages of written material were seized as contraband. (Dkt. No. 19-2 at 9). Plaintiff received a contraband receipt for his materials. (*Id.*) Plaintiff states that on May 21, 2014, he wrote another letter to defendant Racette regarding the "legal materials," and again stating that if he were being denied these materials, the denial should be in writing. (AC at 5). On the same day, plaintiff filed another grievance regarding the "silent denial" of these "legal documents." (*Id.*; *Compare* Dkt. No. 19-2 at 10 *with* Dkt. No. 19-2 at 11). On May 27, 2014, plaintiff was called for a Urinalysis Test by former defendant Clancy.[8]

Plaintiff alleges that, after returning from giving his urine sample, he received a response from DSP Proulx regarding plaintiff's request for "legal" materials. (AC at 6; Dkt. No. 19-2 at 14). DSS Proulx's response is dated May 27, 2014 and states that he

---

[7] Plaintiff originally claimed retaliatory cell searches, but Judge McAvoy dismissed any such claims in his June 24, 2015 Order. (Dkt. No. 21 at 8-9). This court is repeating these facts only as background for plaintiff's claims.

[8] In his June 24, 2015 Order, Judge McAvoy dismissed Officer Clancy as a defendant and dismissed any claim that the request for a urine sample was "retaliatory" for all plaintiff's grievances. (Dkt. No. 21 at 9).

had "no objection" to plaintiff's receipt of information on Ecclesiastical Cannon Law, but that plaintiff's request for UCC materials was not specific enough. (Dkt. No. 19-2 at 14). DSP Proulx told plaintiff that he must provide more specific information as to why he needed these materials and for what purpose he would be using them. (*Id.*)

Plaintiff states that on May 30, 2014, he responded to DSP Proulx's memorandum, alleging that he needed the UCC to "'become familiar with the rules and laws of commerce'" and to "'give plaintiff the legal legs to stand on to support his argument in a court of law.'" (AC at 6; Dkt. No. 19-2 at 16). Plaintiff also states that he was "looking for information from the Sec. of State Department in which UCC information will be written within." (*Id.*) In his letter, plaintiff stated that "All crimes are commercial," and that "commercial law . . . effects [sic] everyone that [sic] is convicted of a crime." (Dkt. No. 19-2 at 16-17).

On June 4, 2014 and on June 16, 2014, plaintiff filed "additional grievances" relating to the "silent denial" of his "legal" materials request by defendant Racette. (Dkt. No. 19-2 at 19-24). On June 21, 2014, plaintiff wrote to Deputy Superintendent/Administrative Services ("DSAS") D. Keysor to "address" the plaintiff's request for the same legal materials and the "silent denial thereof." (AC at 7; Dkt. No. 19-2 at 25). On June 23, 2014, DSAS Keysor sent plaintiff a memorandum stating that his correspondence had been "forwarded to S. Brown, Deputy Superintendent/Security Services and J. Proulx, Deputy Superintendent/Program Services, for whatever action they deem appropriate." (AC at 7; Dkt. No. 19-2 at 27).

Plaintiff continued to follow up with his requests for these legal materials,

4

including a June 23, 2014 request that the Inmate Grievance Review Committee ("IGRC") forward plaintiff's grievance directly to the Superintendent because of "'lack of timeliness on behalf of I.G.R.C." (AC at 7; Dkt. No. 19-2 at 25). The IGP Supervisor informed plaintiff on June 26, 2014 that there was no June 4, 2014 grievance on file, but there was a grievance dated June 16, 2014 regarding the UCC forms. (AC at 7; Dkt. No. 19-2 at 28). So, on June 30, 2014, plaintiff resubmitted his June 4, 2014 grievance, and on July 17, 2014, plaintiff received a response indicating that his grievances were "being reviewed." (AC at 7).

Ultimately, plaintiff's request was sent to the Central Office for "review and determination." (AC at 7; Dkt. No. 19-2 at 33). Plaintiff received a notice stating that, no decision had been made, but when a determination was reached, the plaintiff would receive a response. (Dkt. No. 19-2 at 33). Plaintiff sent various additional letters, including a September 6, 2014 letter to DSAS Keysor, asking whether the Central Office had made a determination; and an October 23, 2014 letter and Freedom of Information Law ("FOIL") request to Acting Commissioner of DOCCS, Anthony Annucci. (AC at 8; Dkt. No. 19-2 at 35). Plaintiff states that he received responses on October 20, 2014 and on December 15, 2014. (AC at 8). Plaintiff was told on December 15, 2014 that plaintiff's documents that were sent to the Central Office could not be located. (*Id.*)

Plaintiff alleges that on December 4, 2014, he was "assaulted" by defendant L. Nolan while plaintiff was asleep in his cell. (*Id.*) Plaintiff states that he felt a very sharp pain in his lower right leg and ankle area. He awoke to see defendant Nolan putting

5

away his baton. Plaintiff commented that Nolan should not be putting his "hands" on plaintiff, and asked Nolan his name so that he could "report" him. Defendant Nolan allegedly told plaintiff to "'write whatever the fuck you want,'" "'you see what writing just got you,'" and "'keep on writing and see how far that gets you.'" (AC at 8). The same day, after the assault, plaintiff filed a grievance against defendant Nolan based upon the assault and "retaliatory treatment."[9] (*Id.*) The following day, plaintiff received a misbehavior report, written by defendant Nolan, charging plaintiff with disobeying a direct order, causing a miscount, and delay of count. (*Id.*) Plaintiff states that on December 9, 2014, Disciplinary Hearing Officer Lieutenant Miller dismissed all charges against plaintiff relative to the misbehavior report written by defendant Nolan. The dismissal indicates that there was insufficient evidence to substantiate the charges. (AC at 9; Dkt. No. 19-2 at 57). Plaintiff alleges that on December 8, 2014, plaintiff was "denied medical attention," but was examined on December 11, 2014, during which the medical staff noted that plaintiff's right ankle was "still slightly swollen."[10] (*Id.*; Dkt. No. 19-2 at 55)

Plaintiff states that on January 23, 2015, plaintiff wrote to defendant Racette about the assault and the disappearance of two grievances pertaining to that assault. (AC at 10). Plaintiff states that on January 28, 2015, defendant Racette responded that

---

[9] Plaintiff alleges that on December 30, 2014, plaintiff re-submitted the grievance against Nolan, and submitted an affidavit of "service" on IGP Supervisor Gregory. (AC at 9). Plaintiff alleges that on December 23, 2014; January 23, 2015; and January 22, 2015, plaintiff submitted FOIL requests to attempt to locate his missing grievance, but was informed that "such records" do not exist. (*Id.*)

[10] Plaintiff is not alleging an unconstitutional denial of medical care.

he referred plaintiff's letter to S. Brown, the Deputy Superintendent of Security ("DSS") for review. (AC at 10). Plaintiff states that he appealed the "denial" of his FOIL request, but that the appeal was not decided at the time of filing of the complaint. (AC at 10). Plaintiff alleges that on May 4, 2015, he received another letter from defendant Racette indicating that plaintiff's correspondence had been referred to S. Brown "for review and appropriate activity." (*Id.*)

After Judge McAvoy's review of the amended complaint, the following claims remain: excessive Force against defendant Nolan (defendants do not move to dismiss this claim); retaliation against defendant Nolan, and supervisory liability against defendant Racette based upon defendant Nolan's conduct.

## II. <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted);

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

### III. <u>Respondeat Superior</u>

#### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the

factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit). This court finds that even if the *Colon* factors are considered, and are all still viable, plaintiff has not alleged the requisite personal involvement of defendant Racette.

### B. Application

In this case, defendant Racette clearly did not directly participate in the alleged excessive force. Thus, in order for personal responsibility to attach, it must be established though one of the other factors listed above. In his response to the defendants' motion to dismiss, plaintiff argues for the first time that defendant Racette was made "aware a number of times that plaintiff was being harassed." (Dkt. No. 32 at ¶¶ 3, 12). Plaintiff claims that, based on his awareness that plaintiff had been harassed a number of times and then assaulted, he was "grossly negligent and exhibited deliberate indifference to plaintiff's rights when he failed to "take reasonable and responsible action to stop the violation of [plaintiff's] 8th Amendment right as well as [his] 1st Amendment right." (Dkt. No. 32 at ¶ 12).

Also for the first time, plaintiff alleges that the "policy" at Clinton is that when a

10

grievance is filed, the officer is automatically notified so that the inmate can be intimidated into "signing off" on the grievance. (Dkt. No. 32 at ¶ 4). Finally, plaintiff claims that every time that defendant Racette was made aware or put on notice of the harassment, "all he did was refer the matter to the Dep. of Security who did nothing. . . ." (Dkt. No. 32 at ¶ 13).

A review of the amended complaint and all the documents that plaintiff has attached shows that plaintiff never mentioned defendant Nolan until the grievance regarding the alleged assault on December 4, 2014. Although a supervisory officer may be liable for a constitutional violation after learning of it through a report or appeal, that only applies if the officer can remedy the violation. Personal involvement requires that the individual who is, or becomes aware of, the violation, have the ability to take action to correct the problem. *See Conklin v. City of Suffolk*, 859 F. Supp. 2d at 441-42 (personal involvement requires knowledge *and* the ability to take action). The fact that defendant Racette knew about the assault after it happened cannot make him responsible for the alleged assault because the "constitutional violation" of which plaintiff was complaining had already taken place, and there was nothing that defendant Racette could do after the fact, to "prevent" or "remedy" the assault.

Plaintiff's conclusory allegation, presented for the first time in his response to the motion to dismiss, that defendant Racette was told many times about Nolan's harassment, is not plausible. Plaintiff never mentions defendant Nolan prior to the assault, and never alleges any form of previous harassment by Nolan. The letters and grievances that plaintiff has attached to his amended complaint deal mostly with his

11

request for UCC and other legal materials. The two times that he alleged "retaliation" or harassment in connection with his legal material request were related to cell searches and a urine test, neither of which involved defendant Nolan. Thus, it is unclear how defendant Racette would have been aware of such alleged conduct by Nolan.

Plaintiff is also confusing personal involvement with failure to protect, which would be an independent constitutional claim from the Eighth Amendment claim against defendant Nolan for which plaintiff is attempting to establish "personal responsibility" by defendant Racette as a superior officer.[11] In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, **and** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

To the extent that plaintiff is attempting to assert a new claim, there are no facts upon which to base this allegation. Plaintiff has attached a variety of letters that he wrote to defendant Racette and other officers. None of these involve defendant Nolan until after the alleged assault. Plaintiff's statement that he made a "number of

---

[11] An affirmative failure to protect claim would be separate from, and in addition to, the ultimate claim for excessive force. Plaintiff does not have a failure to protect claim in either the original or the amended complaint.

12

complaints" about being harassed by "unknown officers" does not state a plausible claim against Racette for failure to protect, nor does it make him personally responsible, after the fact, for Nolan's alleged assault.

Finally, plaintiff alleges that, every time Racette was made aware or put on notice, that plaintiff was "being harassed or assaulted," he referred the matter to the Dep. of Security. The personal involvement of a supervisory official cannot be established if his only involvement is to refer an inmate's complaint to the appropriate staff for investigation.[12] *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoner to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official). Thus, plaintiff cannot establish personal responsibility of defendant Racette based upon his referral of plaintiff's letters to either S. Brown or DSP Proulx, and the complaint may be dismissed in its entirety as against defendant Racette.

---

[12] In fact, it is clear there is no constitutional right to an investigation by government officials at all. *Nieves v. Gonzalez*, 05-CV-00017, 2006 WL 758615 at *4 (W.D.N.Y. March 2, 2006) (collecting cases). *See also Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement); *Greenwaldt v. Coughlin*, No. 93 Civ. 6551(LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.")

## IV. Retaliation

### A. Legal Standards

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendant. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380. The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett*, 343 F.3d at 137.

### B. Application

Plaintiff argues that, in addition to using excessive force, which is a constitutional violation on its own, defendant Nolan was using the excessive force in retaliation for plaintiff's grievances. There is no indication other than plaintiff's conclusory allegation to this effect, that defendant Nolan even knew about plaintiff's grievances, or his issues with the UCC and other legal documents.

Participation in the grievance process by an inmate is clearly protected conduct

in the context of a retaliation claim. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367 & n. 21 (S.D.N.Y. 2011) (collecting cases). Excessive force would certainly constitute "adverse action because it would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." However, plaintiff must still plausibly allege that there is a causal connection between his grievances and defendant Nolan's alleged assault. As stated above, defendant Nolan was not involved in either the cell searches or the urine testing, and in any event, Judge McAvoy found nothing to indicate that such actions were "retaliatory."

Plaintiff's response to defendants' motion to dismiss shows just how speculative his claims of retaliation are against defendant Nolan. Plaintiff states that "[a]s to why [Nolan] assaulted me, that is a question he can only truly answer." (Dkt. No. 32 ¶ 10). Plaintiff then states that it was a "known fact" that he had to resubmit a number of grievances which "for some reason" were not reaching their destinations. (*Id.*) Plaintiff states that "[i]t can be assured that other correctional officers had intercepted these grievances . . . , and Nolan could have been present when these officers begin to spread my name amongst themselves negatively." (*Id.*) Then plaintiff states "[b]ut there is no doubt that C.O. Nolan assaulted me!"[13] (*Id.*)

This paragraph makes it clear that plaintiff is making conclusory allegations that the motive for defendant Nolan's assault was plaintiff's grievances, which had absolutely nothing to do with him, until after the alleged assault. The fact that

---

[13] As defendants state, they are not making the motion to dismiss based on the assault claim. Plaintiff's alleged claim of excessive force will proceed.

15

defendant Nolan "could have been around" when other officers were talking about plaintiff's grievances does not show a plausible nexus between plaintiff's protected conduct and any alleged use of force by Nolan. "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *See, e.g.*, *Hare v. Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011)(citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer); *Roseboro v. Gillespie*, 791 F. Supp. 2d at 369 (plaintiff has failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in).

In this case, the grievances that plaintiff discusses in the complaint were directed at the facility's failure to respond to plaintiff's request for permission to possess legal documents in a manner that was satisfactory to plaintiff. The grievances were not directed toward individual corrections officers. It is even less likely that Officer Nolan would retaliate against plaintiff for grievances that neither involved him, nor affected him in any way. Thus, plaintiff cannot show a plausible nexus between defendant Nolan's alleged conduct and plaintiff's grievances. Any retaliation claim as against defendant Nolan may be dismissed, and only the Eighth Amendment excessive force claim may proceed as against this defendant.

V.  **Opportunity to Amend**

   A.  **Legal Standard**

Generally, when the court dismisses a pro se complaint for failure to state a

claim, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. Jan. 28, 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000). In *Cuoco*, the Second Circuit held that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint.")

### B. Application

In this case, plaintiff's original complaint was dismissed with leave to amend as to the personal involvement of defendant Racette and as to retaliation by defendant Nolan. Thus, plaintiff has already had an opportunity to amend. Plaintiff has failed to sufficiently substantiate these claims in his amended complaint, and in fact, has shown in his response to the motion to dismiss, that his allegations of personal involvement and retaliation are baseless. Thus, this court will recommend dismissal without the opportunity for further amendment.

**WHEREFORE**, based on the above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 28) be **GRANTED**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY AS TO DEFENDANT RACETTE**, and it is

**RECOMMENDED**, that plaintiff's retaliation claims may be **DISMISSED AS AGAINST DEFENDANT NOLAN**, and it is

**ORDERED**, that this case proceed with discovery as against defendant Nolan for plaintiff's claim of excessive force only.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 7, 2015

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge