**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

TOWAUN COLEMAN,

                                  Plaintiff,

                                                                            9:15-CV-40

        v.                                                             (TJM/ATB)

STEVEN RACETTE, et al.,

                                  Defendants.

---

TOWAUN COLEMAN, Plaintiff, pro se
NICOLE E. HAIMSON, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

**REPORT-RECOMMENDATION**

      This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge. Presently before the court is defendant Nolan's[1] motion for summary judgment pursuant to Fed. R. Civ. P. 56, arguing only that plaintiff has failed to exhaust his administrative remedies as to his allegations of excessive force, which is the only remaining claim in this action. (Dkt. No. 50). Plaintiff has responded in opposition to the motion. (Dkt. No. 52). For the following reasons, this court agrees with plaintiff and will recommend denial of the defendant's motion.

**I.    <u>Summary Judgment</u>**

      Summary judgment is appropriate where there exists no genuine issue of material

---

[1] Defendant Nolan is the only remaining defendant.

fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

**II.    Relevant Facts**

The amended complaint alleges that, on December 4, 2014, plaintiff was "assaulted," while asleep in his cell, by defendant L. Nolan. (Amended Complaint

2

("AC") at 8, Dkt. No. 19). Plaintiff states that he felt a very sharp pain in his lower right leg and ankle area. He awoke to see defendant Nolan putting away his baton. Plaintiff commented that Nolan should not be putting his "hands" on plaintiff, and asked Nolan his name so that plaintiff could "report" him. Defendant Nolan allegedly told plaintiff to "'write whatever the fuck you want,'" "'you see what writing just got you,'" and "'keep on writing and see how far that gets you.'"[2] (*Id.*)

Plaintiff alleges that this incident constitutes excessive force by defendant Nolan. Plaintiff also claimed that the assault was in retaliation for plaintiff's grievances. The retaliation claim was dismissed as a result of the prior motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[3] The only issue remaining is whether defendant Nolan used excessive force on plaintiff on December 4, 2014, when he allegedly struck plaintiff in the leg with his baton.

### III. Exhaustion of Administrative Remedies

#### A. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an

---

[2] Plaintiff's amended complaint contains additional facts that he believed led up to this assault. (AC *generally*). On December 7, 2015, I issued an Order and Report-Recommendation following a motion to dismiss, filed by defendant Nolan and former defendant Racette. (Dkt. No. 34). Included in my Order and Report-Recommendation is a detailed description of the facts as stated by plaintiff in his amended complaint. (Dkt. No. 34 at 2-7). The District Court approved the Recommendation in its entirety on January 4, 2016. (Dkt. No. 38). The court assumes familiarity with the facts as stated in the Report-Recommendation. Defendant has filed a number of exhibits, including plaintiff's deposition. (Dkt. No. 50, Exs. A-C). I will discuss the facts contained in the defendant's current exhibits, but have not included a complete recitation of the amended complaint. I will only discuss the original facts as necessary to the resolution of this motion for summary judgment.

[3] (Dkt. No. 34 at 14-16). Defendant Nolan did not move to dismiss plaintiff's claim of excessive force in the motion to dismiss. (Dkt. No. 34 at 1 n.3 & 15 n.13).

3

inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the

IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id*. § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special

5

circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 2016 WL 4572321 at *2. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

6

### B. Application

Defendant argues that plaintiff never brought a grievance complaining about defendant Nolan's alleged use of excessive force on December 4, 2014. In support of this motion, defendant has filed the declarations of Jeffrey Hale, the Assistant Director of the Inmate Grievance Program ("IGP") for the Department of Corrections and Community Supervision ("DOCCS"), and of Christine Gregory, the IGP Supervisor at Clinton Correctional Facility ("CCF"). (Hale Decl., Gregory Decl.) (Dkt. Nos. 50-4, 50-5). Jeffrey Hale states that the DOCCS records reflect that plaintiff was incarcerated at CCF at the time of the alleged incident until March 25, 2016, and that during the entire time, CCF had a "fully functioning inmate grievance process available" to which all inmates had access. (Hale Decl. ¶ 11). Jeffrey Hale states that he examined the CORC records for "determinations upon grievance appeals brought by [plaintiff]." (Hale Decl. ¶ 10). A copy of the computer print-out listing this information is attached as Exhibit A to the Hale Declaration. The records show that plaintiff filed one grievance appeal to the CORC, and this appeal was filed while he was incarcerated at Auburn Correctional Facility in December of 2010. (Hale Decl. ¶ 12 & Ex. A). No appeals to the CORC were filed by plaintiff as the result of grievances filed at CCF. (*Id.*)

In her declaration, Christine Gregory asserts that she supervises the IGP program and maintains its records in the regular course of business. (Gregory Decl. ¶¶ 2, 10). Ms. Gregory also searched the records maintained by DOCCS of inmate grievances filed at CCF. (Gregory Decl. ¶ 4). Ms. Gregory's search of the relevant documents showed that plaintiff filed a total of seven (7) grievances while he was housed at CCF.

(Gregory Decl. ¶ 12). He filed three (3) grievances in 2014; three (3) grievances in 2015; and one (1) grievance in 2016. (*Id.*) None of these grievances were filed at CCF between December 2014 and January 2015. (*Id.*) Ms. Gregory also states that none of these grievances concern the December 4, 2014 incident. (*Id.*) Ms. Gregory has attached the computer print-out from which she obtained this information. (*Id.* ¶ 12 & Ex. A - Inmate Grievance Summary).

The information submitted by Ms. Gregory shows that plaintiff's last grievance in 2014 was filed in June of 2014, and plaintiff did not file any other grievances until April 29, 2015, in which he alleged "Verbal Harassment by CO."[4] (*Id.* Ex. A). His next grievance was dated July 1, 2015 and was entitled "Allegs [sic] Assaulted by Security." (*Id.*) Ms. Gregory concluded that "plaintiff never submitted any grievances against Defendant Nolan concerning an alleged excessive force incident on December 4, 2014," rendering plaintiff's excessive force claim unexhausted. (Gregory Decl. ¶ 13).

However, plaintiff alleges that he wrote a grievance on December 5, 2014, and gave it to another inmate to put in the facility mailbox. (AC at 9, Pl.'s Dep. 108, 110).[5] Plaintiff stated that the grievance included declarations from two inmates who witnessed the incident. (AC at 9). During his deposition, plaintiff testified that he later made a Freedom of Information Law request[6] for a copy of his grievance just to make

---

[4] The court notes that the claim of verbal harassment was also against defendant Nolan. (Dkt. No. 52-9 Ex. Z-3) (Pl.'s appeal to the CORC).

[5] Plaintiff's deposition is attached as Exhibit A to the Declaration of AAG Haimson. (Dkt. No. 50-7). The court will cite to the deposition as "(Pl.'s Dep.)."

[6] It appears that the FOIL request was made on December 22, 2014. (Pl.'s Dep. at 111).

sure the IGRC received a copy.[7] However, he was told that no such grievance existed. (AC Ex. R-1 at 13 & V-1).

Plaintiff alleges that he "resubmitted" the grievance on December 30, 2014, but he never received a response. (AC at 9, Pl.'s Dep. at 108, 110). Plaintiff attached, to his amended complaint, a copy of the grievance, dated December 4, 2014 and the two inmate declarations. (AC Ex. R-1 at 1-8). The "resubmitted" grievance contains a cover-letter, addressed to the IGRC, stating that plaintiff had been informed through his FOIL request that the IGRC never received his December 5, 2014 grievance, and plaintiff was "re-submitting [his] initial grievance regarding retaliatory treatment/ assault." (AC Ex. R-1 at 9-11). This purported grievance clearly addresses the alleged assault by defendant Nolan. (*Id.*)

The court notes that this was not the first time that plaintiff "resubmitted" a grievance. The Amended Complaint also contains the copy of an unrelated grievance that plaintiff stated he was "resubmitting," after being told that the initial grievance was not received. (AC Ex. L-1). The resubmission letter for this unrelated grievance is dated June 30, 2014, and there is a notation at the top of the letter, that the grievance was "consolidated" with CL65724-14." (*Id.*) This grievance apparently was filed after plaintiff resubmitted it because it was assigned a number, and it does appear on the Inmate Grievance Summary submitted by Ms. Gregory. (Gregory Decl. Ex. A).

Plaintiff does not challenge the defendant's assertion that no grievance was

---

[7] Plaintiff's theory for submitting a FOIL request was that, if the IGRC had received his grievance, they would be able to send him a copy, and this would be a way to confirm receipt of the grievance. (Pl.'s Dep. at 109).

9

"filed" regarding the alleged assault by defendant Nolan. Rather, plaintiff argues that his ability to file the grievance was impeded because plaintiff attempted to file the grievance twice, but the IGRC never received either grievance.

Defendant references prior authority from this district for the proposition that "an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." (Def.' Mem. of Law at 10) (citing *Rosado v. Fessetto*, No. 9:09-CV-67 (DNH/ATB), 2010 WL 3808813, at *7, 2010 U.S. Dist. LEXIS 108238, at *19 (N.D.N.Y. Aug. 4, 2010) (Rep't-Rec.), *adopted*, 2010 WL 3809991, 2010 U.S. Dist. LEXIS 99073 (N.D.N.Y. Sept. 20, 2010). At the time I wrote the Report-Recommendation in *Rosado*, this was a correct statement of the law. However, *Ross, supra* has changed the law with respect to exhaustion of administrative remedies.[8] Now, the only relevant inquiry in an exhaustion case is whether the administrative remedies were "available" to the inmate. 136 S. Ct. at 1859-60. If prison administrators "thwart" inmates from taking advantage of the grievance process through "machination, misrepresentation, or intimidation," the administrative remedies are "unavailable," and the inmate is excused from the exhaustion requirement, regardless of which "official" prevented plaintiff from filing the grievance. *Id.* at 1860.

In any event, plaintiff is not making a "general claim" that his grievance was lost or destroyed. He has submitted a great deal of documentary evidence in an effort to show that he was prevented from filing a grievance through no fault of his own. He has filed exhibits consisting of his original grievance, a resubmitted grievance, letters to

---

[8] Defense counsel recognizes this in a footnote. (Def.'s Mem. of Law at 12 n.2).

superior officers reporting problems with filing grievances. He also claims that CCF has had problems in the past with the receipt and filing of inmate grievances. (Dkt. No. 52-4 at 7) (Agenda from a 2009 Inmate Liaison Committee Meeting at CCF where the grievance issue was discussed).

In *Moreau v. Peterson*, No. 15-2534-pr, slip op. at 3 & n.1 (2d Cir. Jan. 12, 2017), the Second Circuit affirmed a dismissal of civil rights claims for failure to exhaust, even though the plaintiff claimed that he was prevented from doing so, because his argument was "inconsistent with the fact that he filed grievances for other claims in the same time period, and those grievances were processed fully." *Id.* at 3 n.1. A review of the District Court's opinion in *Moreau* shows that plaintiff provided "no evidence" of filing grievances related to the claims in question, all of which occurred after the last grievance that was attached to the complaint. *Moreau v. Peterson*, No. 7:14-CV-201, 2015 WL 4272024, at *7 (S.D.N.Y. July 13, 2015).

This case is distinguishable from *Moreau* and from cases decided prior to *Ross*. Plaintiff has produced evidence indicating that he did write a grievance on December 4, 2010, and that he attempted to submit it twice without success and without response from the IGRC. On January 23, 2015, plaintiff wrote a letter to Superintendent Racette complaining about "grievances disappearing." (Pl's Ex. U-1, Dkt. No. 52-8 at CM/ECF pp. 3-6). The letter was very specific and complained about the grievance program. On January 28, 2015, Superintendent Racette responded to plaintiff stating that "[y]our recent communication has been referred to S. Brown, Deputy Superintendent - Security, for review and appropriate action." (*Id.* Ex. V-2, Dkt. No. 52-8 at CM/ECF p.7).

11

Plaintiff's deposition testimony is consistent with these allegations and the accompanying documents he has submitted in response to the defense motion. (Pl.'s Dep. at 115).

Plaintiff stated that "[o]nce again I FOILed for a copy of that grievance to see if they actually received it and, once again, I got back the response that they didn't receive it. So, I then wrote a letter to the superintendent in regards to that whole situation." (Pl.'s Dep. at 115-16).

Defense counsel asked why plaintiff did not appeal to the Superintendent. The regulations provide that an inmate may appeal a grievance to the "next step" if he does not receive a timely response. 7 N.Y.C.R.R. § 701.6(g)(2), 701.8(g). The court notes, however, that if a grievance is lost or destroyed before it is received by the IGRC and assigned a number, it would be difficult to "appeal" a grievance "to the next step." The regulations, allowing an inmate to appeal to the "next step" if he does not receive a timely response, envision a situation in which the grievance is filed, but no response is received in the time allotted by the regulations. *See Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) ("On their face, the regulations only contemplate appeals of grievances that were actually filed. . . . Accordingly, the regulations give no guidance whatsoever to an inmate whose grievance was never filed.)

This case is very similar to *Williams*. Plaintiff in this case would not have been able to file a formal "appeal," because his grievance was never filed with the IGRC or assigned a number. Plaintiff stated that he appealed by writing the January 23, 2015 letter. (*Id.* at 116). Plaintiff's letter to the Superintendent was a logical step for him to

take after two of his grievances were not received by the IGRC. The Superintendent responded that he was referring plaintiff's complaint for investigation. Plaintiff had no reason to believe the he was required to take another step after the Superintendent's letter. There is no evidence that plaintiff received a formal response after the promised investigation.

Defendants argue that plaintiff was able to file a subsequent grievance complaining about defendant Nolan's alleged verbal harassment in April of 2015 and another grievance about assault by staff in July of 2015, in addition to mailing other letters. However, the court notes that both of these grievances were filed after plaintiff complained to the Superintendent, and after his complaint was referred for investigation. This case represents more than a plaintiff claiming, without support, that his grievances disappeared. After *Ross*, this court cannot find that defendant has established on the existing record, that there is no material question of fact with respect to the exhaustion of plaintiff's remedies, and I will recommend denying defendant's motion for summary judgment based on failure to exhaust administrative remedies.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 50) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.-

Dated: January 17, 2017

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge